Good afternoon, Your Honors. Dana Sontag, appearing on behalf of the County of Sonoma and Child Protective Services Social Worker, Jerry Newman. Your Honors, we have two appellants. It's our intent to split our time equally. The intent is five minutes for each of myself and Mr. Whitesides, reserving two and a half minutes each for rebuttal. All right, fine. If it please the courts, Your Honor. The court, Your Honors, there are a number of defenses that we've asserted. What I'm here today, Your Honors, to focus on, primarily on one, which is the defense of integral participation, or in this case, what we believe is the lack of integral participation. The law is clear that if there's no integral participation in connection with a civil rights claim, then there's no constitutional violation, and that entitles the defendant to qualified immunity under the first prong of the Saussure test. Now — Kagan. I'm not sure if that makes sense, but on the collateral order appeal, well, no, that's not right. With regard to qualified immunity, though, there's no second-level discussion of that question, right? In other words, he either is or isn't an integral participant. If he's an integral participant, he hasn't committed a constitutional violation. But he doesn't — if he doesn't — if he is an integral participant, he doesn't get to say, but I didn't think I was. I reasonably didn't think I was. No, I think that's correct, Your Honor. I agree with Your Honor. It's only a one-level inquiry. Either he committed a violation or not, and that's it. Right. And we think the facts on that in this case, Your Honor, are undisputed. I'm not entirely sure why that comes up in a collateral order appeal, but we seem to have case law allowing that. I see. Okay. But it does come up. But you're not claiming that there's a reasonableness test after that. No. The only reasonableness would be whether the law was clearly established as to whether this conduct constituted integral participation. The conduct, but not necessarily his integral relationship to it. Yes, Your Honor. Yes. Thank you. The — and the facts, we believe, are undisputed as to the lack of integral participation with respect to Mr. Newman. And the key is that this is a claim for removal of children without a warrant. And it's the without a warrant part that is key, because the evidence and evidence that I'm going to cite, very succinct portions of it, is undisputed that Mr. Newman was not at all involved in the decision to remove without a warrant. And what that is based on is, first — Well, isn't there a factual dispute as to who is — who made the decision? No, there isn't, Your Honor. And I'm happy — and I have four very succinct excerpts of the record to read to show that there's no dispute. What you're saying, just to be clear, is that he may have been involved in the decision to remove the child, and there may be a factual dispute about that. But as to whether he made a decision — was involved in the decision to do it right away and without a warrant is a different question. I think that's correct, Your Honor. I think he was involved in giving input into whether he believed removal was appropriate. And the law and the regulations under this local authority are clear that only the police have the authority to conduct the removal, and they're the ultimate decision makers. I think he had a state of mind of agreement with removal being appropriate. More than — more than agreement, was it not? Was it not a strong recommendation? I think it was an agreement — in all fairness, Judge Pollack, that it was an agreement that the children should be removed. I don't think there's any evidence — and, in fact, the evidence contradicts any claim that Mr. Newman reached an agreement that the removal should be without a warrant. In fact, the undisputed evidence is that he had no input into that decision. And that's the only thing that this lawsuit is over. Somebody presented him with that decision, and he just ministerially executed it? The evidence is that he was not presented with that decision. He did — And you're saying it's the social work — You're talking about — Yes, Your Honor. The social work made no recommendation? No recommendation as to whether there should be a warrant or not. Correct. And the evidence on that — Was there not a recommendation that the children would be removed immediately? I don't think there was, Your Honor. I think there was an agreement that it was appropriate to remove the children. And it was — it's probably fair to infer that it was a — that the agreement was that they would be removed immediately. But whether that meant with a warrant or without a warrant, I don't think — How could they be removed immediately by the officers without — without a warrant? Under the local policies, Your Honor, that's — the social workers don't get warrants. They don't do removals. No, no. But they — if the decision was that the child should be removed — the children removed immediately, and then an officer was called, how did the — how could the children have been removed immediately without a warrant? Well, I think, Mr. Newman — I mean, with a warrant. It couldn't have been removed immediately. It would have taken the time for a warrant. I think the evidence shows that Mr. Newman agreed it was appropriate to remove immediately. But also, the officer was involved at the beginning — at least by the beginning of that day. The officer was involved during that day, Your Honor, and was present at the interviews. And at the conclusion of the interviews said, I think we need to take these kids or I think I need to take these kids immediately. Mr. Newman did not dispute that, didn't say don't do it. I don't know that he had any capacity. And not only that, he arranged to be someplace where they were going to be taken right at that — so he knew what was going on right then. I think it's fair to infer that he knew that the officer was going to go remove the children right away. I think the evidence is fair to make that conclusion. But Mr. Newman was not involved in the decision of whether that would involve a warrant or not. Now, Mr. — Officer Connors — Well, didn't immediately have to mean without a warrant? Well, what I was about to say, Judge Reinhart, is Officer Connors could have presumably obtained a warrant in some manner through phoning methods, through people at the district attorney's office or people at his office getting warrants in the way they get warrants. And that could have happened, I assume, relatively quickly. The point is there was no — Or it could theoretically have happened earlier in the day, and it could have done this other — this other forensic interview just to be sure. Absolutely. And, Your Honor, one thing that's important to realize, I think, is that there was more than one way to do this. It would have been appropriate to get a warrant, but we think it was appropriate to do the removal without a warrant as well. We don't think that was a constitutional violation. Officer Connors, in his police report, stated, I made the decision to place all four of the minor children into protective custody. Mr. Newman, in his testimony in the dependency proceeding, was asked the question of who made the decision to detain the children. Answer, quote, that decision was made by the detective. The testimony goes on for Mr. Newman. In this case, in his declaration, Your Honors, he testifies at page 293 of the record, quote, I gave input to Detective Connors, and Detective Connors made the decision to remove Frank and Erica immediately. Detective Connors, and this is important, did not seek input from me as to the process for the removal, i.e., whether a warrant or protective custody order should be obtained. I agreed it was appropriate to remove the children, but I had no input into Detective Connors' decision to remove them immediately without a warrant, end quote. And finally, Officer Connors testified in his deposition, quote, I was the one with the authority to do a removal under 305, end quote, and 305 is the state statute that allows a peace officer, not a social worker, to do a warrantless removal. So I think the evidence, I think it's a fair inference from the evidence that Mr. Newman knew there would be an immediate removal, but the process for doing that was in Officer Connors' ballpark, and that's the way it's done under the local regs, the local regulations. First, the CPS policies and procedures at page 311 of the record states, if protective custody is indicated, contact police, jurisdiction in which incident occurs, police remove the child and inform the parents. That's social workers do understand that a warrant is required, except in the case of exigency, do they not? Yes, Your Honor. Yes. Because they themselves, in certain circumstances, have the authority to remove, is that not right? They can under very narrow circumstances under state law, Your Honor, but that's correct. But the way it works in this county is that social workers do not conduct warrantless removals, and the evidence for that in the record, Your Honor, is at page 500 of our excerpt. It's a deposition of Mr. Newman's supervisor, Bob Hopper. His testimony is, quote, social workers in Sonoma cannot remove children from parental care, end quote. And so that's the evidence, in addition to the interagency protocol among the various agencies in the county of Sonoma. That states that if the child welfare worker, here Mr. Newman, determines the child cannot be safely left in the home, the child welfare worker will contact law enforcement. In the absence of a court order, quote, law enforcement has the ultimate authority to place a child in protective custody, end quote, page 361. And finally, it's brought home by the police department's own policy and practice that says child protective services workers do not have the authority to take a child into protective custody. And it gives the investigating officer the authority to do that at page 542 of our excerpt. And I think we'd better give your co-counsel. Thank you, Your Honors. Good afternoon, Your Honors. John Whitesides for Detective Brad Connors. I want to first emphasize to the Court that the summary judgment order that's before you was issued as a result of a hearing held well after the close of discovery and shortly before the case was set for trial. There was each side, all three sides to the case had its own motion. The plaintiff had a summary adjudication, partial summary judgment motion. Each defendant had a full summary judgment motion. The reason I point that out is that there was no dispute as to who did what when. The issues were all what were the legal effects or what was the legal significance of the actions that were undisputedly taken. That's important because since we're before you in a summary judgment setting, the absence of any historical factual dispute allows this Court to decide as a matter of law the constitutional violation and collateral estoppel issues that are before you. What was the most unusual aspect of the district court's order is that without finding there to be any historical fact in dispute, the district judge said, well, this is a close call. Now, you can look at these facts and they kind of push you toward the plaintiff, and then you can look at these facts and they somewhat push you toward the defendants. I can't make that close of a call. I think the jury should do it. And yet, when he gets to qualified immunity, that same call that's too close for him to make somehow becomes so clear that no reasonable officer could have performed the removal without a warrant. So we have this internal paradox in the district court's order. But the one thing that we have to say is that we don't have the summary judgment as such before us. We might disagree with him about that, but we don't have it before us. Well, you would because it's inextricably intertwined with the qualified immunity issue. I don't see why. Why? It is because if there was no constitutional violation, then you don't reach the issue. Well, I understand that, but strictly speaking, the question of whether he should have granted summary judgment or not granted summary judgment is not before us. We can look at it simply on the record that exists and say we don't care whether Judge – was it Judge Burrell? Who was Judge – was it Judge? No, Judge Alsop. Whether Alsop was right or wrong about granting summary judgment. Maybe we think he was wrong. But we wouldn't order him to grant summary judgment because that's not our problem at this point. Well, I disagree with you, Judge Berzon, because if you have an order that says it's too close to call and yet at the same time says it's so clear no reasonable officer could have done this. Maybe we don't think it's too close to call. Maybe we think there clearly wasn't an exigency. He was wrong about that. It wouldn't lead us to overturning his denial of summary judgment, because that's not before us. But we don't have to take the same view of the record that he did. No, you don't have to take the same view of the record that he did, but you do have to fix the paradox. One way you could fix it is the way you just said. Yes, you could say it's clear there was a constitutional violation, but in effect, that would be. So it doesn't solve – all I'm saying is it doesn't help us, because maybe he's – you know, he may be wrong on one hand or wrong on the other hand. Maybe there is a paradox, but it's not our problem, because the summary judgment as such isn't before us. Well, if the constitutional violation issue is before you by virtue of the pendent jurisdiction, then you can see them both at the same time, and I assume that your opinion will try to harmonize them. Right. And we couldn't easily – so it doesn't seem to me to get us anywhere at this level. Okay. The other thing I wanted to point out is that, unlike the prior cases that the parties have argued at length which deal with the removal standard, the exigency question, if you will, in this case, we have a final State court judgment, and that presents us with some very different circumstances. Normally, when these cases come up, it's because the parent or parents involved prevail in showing that there was no abuse or serious harm occurring, and they're now vindicating the violation of those rights by the public entity in the Federal Court under 1983. Here, however, we're in the reverse situation, where the mother lost in the State court, and it was affirmed on appeal, and so now what we're trying to do is to – I don't see what that has to do with the question of whether there's an emergency at the time of the arrest. Because the State court, at the time of the detention hearing, passes over the issues of whether the removal of the children was both urgent and necessary. That's something that the State law requires the juvenile court to do. Once that becomes a judgment and is affirmed on appeal, then collateral estoppel attaches to those factual determinations. Kennedy. They say it was an emergency and they had to do it within a couple of hours? Correct. Well, they didn't get into the specifics of the time, but they found that the removal was a necessary matter and that it was something that involved exigency. What – when you say something that involved exigency, what language are you relying on in the court's opinion? The section 319 of the California Welfare and Institutions Code. No, no, no. I'm talking about the judgment that you say is entitled to. Oh, there's California case law that we cited in our brief. The name of the case is M.L. v. Superior Court. No, no, no. I'm sorry. I guess I didn't make the case. No, but it says that – I understand your question, Judge Pollack. What that appellate decision says is that State law requires the juvenile court to make that finding if it is approving the detention of the children. Otherwise, they must be immediately returned to the parent. Now, of course, conceivably, the facts available could have been quite different. Is your contention they weren't? That's correct. As we laid out in our brief, Judge Berzon, there was no evidence submitted at the hearing before the juvenile court. The plaintiff conceded the issue of detention, and no evidence was taken. So the evidence was identical to that at the time of removal. That's the real problem here, isn't it, that it wasn't really adjudicated? Right. And as we've laid out in our brief, case law shows that as long as you have the opportunity to contest the issue collateral estoppel attaches, if you have the opportunity and you choose not to fight it, you can't then later turn around later and say, I'm not precluded because I didn't make any offer to the contrary. You had the opportunity to, and that's all that due process requires, not that you consciously exercised your right to present evidence. The court determined that removal was necessary. Correct. Did it make a recital, a recital that there was exigency so that removal had to be immediate without a warrant? No, it did not pass on that issue. But isn't that crucial? Not under the state statutes and case law that we cited, because as the statutory scheme works, the minute the child is removed and turned over to the responsible social worker at the children's home, that social worker has a statutory obligation to immediately place the child back with his parents unless it's found that there is an urgent and necessary need to continue the detention for the children's physical safety. So when the State court at that initial hearing says, yes, this was urgent or, excuse me, this was necessary to protect the safety of the children, the exigency is bound up in that. You know, that sounds to me like every time the State court finds that the children should be kept in social services custody, that that means you're saying that you don't need a warrant in any of those cases? No. I'm just saying that it would establish the factual elements of urgency and necessity. Only if the record was the same. Only if the record was exactly the same and if it ultimately turned into a judgment. Many of these matters never turn into a judgment. But couldn't there be a different determination with the words may sound similar. But in one case, the issue is whether it could wait 5 hours, and the other is whether the child should be sent back sort of semi-permanently or kept in detention. I mean, the actual issues being addressed are different, even though the words may be similar. You're correct, and that's why we didn't argue claim preclusion or res judicata as to the procedural due process claim. Yes, but still, the factual determination is being made in a context. The context in one case is whether it can wait 5 hours or however long it's going to take to get a warrant, let's say 5 hours. And in the other instance, the context is should this child remain out of the home for the foreseeable future. So the words are being interpreted in the context of what the consequences are. That's true, but that's the two different findings that the juvenile court makes. The second finding is the one that you just referred to, the continuing detention post-hearing. The first finding goes to the initial removal, pre-hearing. So the In what way? I mean, it's a retrospect. What's the difference? The statute requires the juvenile court to determine whether or not that initial removal was in fact necessary, not and that's separate from whether the children should continue to be detained after the hearing. And what do they do with the first finding? The judge found that it was. No, no. What do they do if the judge finds the contrary to that? Oh, then the children, I am sure, must be immediately released back to the parent. Now there's a problem? That makes no sense. Even if he now says yes, but nonetheless, I think that the children should, as for the second inquiry, are actually in future endangered in the future? Oh, you're asking me what would happen if the court found that there was no urgency to remove them 48 hours before, but now there is urgency? Yes. I imagine that would have involved a considerable amount of new evidence that would have come in that would have created that change in affairs. It doesn't make sense. I don't know. If there are cases that say it's fine, but it doesn't make sense to say that in every finding where the judge says yes, you can take the children to social services, that means that the police didn't have to use a warrant because it was urgent. Well, the way that the California appellate court analyzed it is by referring to the Wallace case. And basically what the appellate court said is these statutes are designed to comport with the procedural due process requirements that the Federal law provides. So what the California court is saying is we have this process so that we know that we are in keeping with Federal law, and that discussion is actually in that case. So they are modeling this procedure, if you will, after what the appellate court said. I thought they were modeling a procedure on the fact that when there's time to get a warrant, you get one. When there isn't, you don't have to if it's an emergency. Right. And that takes us to the second area that we brief, which is what is the Federal law on what's an emergency? Yes. And that's that dichotomy that I wrote about between if you have confirmed past abuse, are you then in a different setting than if you're just thinking about, well, nothing's happened yet, but it might happen in the imminent future? If you have past abuse, which is established that once every month the father, for some reason, at midnight on the 10th day of the month, beats the child, and it's now the 15th day of the month, is that an emergency to take the child in? Well, as the case law developed, the aspect that you're asking about, Your Honor, wasn't fleshed out until the Rogers case in 2007, which came down after the events in this case. Rogers added to the original proposition that you have to have specific evidence of imminent serious physical harm. Rogers then added to that, if that harm might recur during the time it would take to get judicial authorization to remove. So with your hypothetical, where it only occurs once a month at midnight, the answer under Rogers would be no. That's not good enough, because based upon all the information you have, it might – it's not going to occur again before you can get a warrant. But we have different facts. We don't have a cyclical pattern. The facts you have show how often was the child beaten or the children beaten. It was not done on a scheduled basis. No. But how often was it? Was it occasional? No. It was frequent according to what the boys reported to the social worker. It could occur at any time for any reason. They testified to the other problem here, and I don't know how it feeds in, is that this wasn't treated all that exigently by, at least by the social worker, social workers up until the point that your client comes into the case, because they – it was first noted as a 10-day investigation, which means whoever first heard it thought there was 10 days to worry about it. And I understand that it's important to have a thorough investigation. But certainly, if you look at how this investigation went on, there was lots of gaps in the middle of time. They were not, you know, proceeding apace. So that's, to me, the more disturbing fact, i.e., it took 6 weeks when it didn't – when, yes, it had to be thorough, but I couldn't quite see why they couldn't have done just as thorough an investigation if they really thought this was an emergency in a week. Well, Your Honor, I don't want to be in the position of trying to directly defend Mr. Suntack's client in that regard. I think I'll instead use discretion rather than valor. No, no, no, no, no, no. He blamed it all on your client. Yeah. But it's also relevant to your client. Because your client knew that there was a 6-week investigation. I mean, he knew that these children had been in that home for 6 weeks from the time that this was first noted. I assume he saw the file at least to that degree. Correct. And he presumably saw – if he had probable cause at all, it was because he read the file and knew what was in it. So he had to have known about the progress of the investigation, the fact that it wasn't all that speedy. That is correct. But that doesn't – let's assume that you're right, Judge Berzon, and that the social worker was not moving with a sufficient alacrity, that doesn't mean that the police officer had to share that same nonchalant view. He was perfectly entitled to take the matter as more serious and more urgent than the social worker did. And the fact that he made the decision the very same day on the spot indicates that he indeed felt differently in that regard. Well, they didn't think it was important to get a warrant, which is not unknown. Agreed. There is a problem with the way Rogers is written. It says if they might again be beaten or molested during the time it would take to get a warrant. Right. Well, you know, might means anything. It happened to get struck by lightning. It's pretty loose. Yeah, it's pretty loose. It could have been written better. It is. And then the other thing, Your Honor, is if you look at the Mabe case, that was the one where there was the touching over the clothing, only occurred at night and hadn't occurred recently. This Court in that case contrasted that with, quote, beatings that might occur at any time of the day. So the case law that was out there at this time was suggesting to the officer rather strongly that beatings are to be looked at differently than a cyclical, I only molest the child, you know, on the 15th of each month, like the satanic sacrifice case in Wallace, where you had a specific time that the harm is supposed to occur. So in that regard, the authorities really were not giving clear guidance as to what you do with whippings that could occur at any point in the day or night. Unless you have other questions, I know I'm way over, and I want to keep to your admonition that we should be short. Thank you very much. Good afternoon, Your Honors. Dennis Ingalls on behalf of the appellee. May it please the Court. This whole case is about five days, right, that the children were out of the house, because everything after that was approved by the Court, the State court, and it's all over. I mean, it's not in this case. In a manner of speaking, Your Honor, the damages in this case stem from those five days only, but the case itself, it spans the 42 days leading up to the removal and then the five days. I understand, but the only deprivation was for five days. The only issue, yes, the only deprivation before the Court, yes, is those five days. What I think what Judge Gershon is asking, and this may have some relation to another possibility, but what – that's what you're really seeking, the five days' worth of damages? In a sense, Your Honor, but as with any type of a deprivation case, we've got the so-called eggshell plaintiff doctrine, right, the continuing wrong. These children were separated from their mother, and they continue to be separated. It's very difficult to parse out what is damages related to the children. And that's the thing about the – the main problem at all. I mean, the rest of the separation, you can't get anything out of from this case, can you? I'm sorry, Your Honor, I didn't get that. But the rest of the separation, all you can get from this case is the five days. I believe that to be true, Your Honor. Yes. It's not very much. The loss of a single minute with one's child is a crisis, right? It's a tragedy here and a very sad story, but this is all – has such a flavor as a tail wagging the dog in terms of fixing anything for anybody that one wonders, honestly, if it's worth the candle, from your point of view or from anybody else's point of view. Your Honor, my client feels very strongly, I feel very strongly that it's absolutely worth – worth everybody's time. The deprivation – the missing a single minute. I just had a son two weeks ago. This is very personal to me. A single minute of time away from one's child when one is not the – has not made a conscious choice, when that choice has been made and imposed upon them is priceless. In isolation, that's true. If that's what you were doing here, if somebody took them for five days and then you got them back, you know, that five days would have meant a lot. But there are far more days that the mother separated from the children. And, you know, this is just a little bit of the beginning of it. This is going to help get them back. Sure. But that's part and parcel to the clatterless doppel claim preclusion argument also, is that the one has nothing to do with the other, Your Honor. The reason I was asking you that is whether there's any hope in this case that the parties could go to mediation. We have an excellent mediation service here. And I don't know what they can offer to your client that might resolve this minor part of the case. We've been, Your Honor, I imagine the answer would be the same as last time, is mediation could add very little. I didn't hear that. I imagine mediation would add very little, Your Honor. We've been involved in mediation or some sort of ADR on two occasions, counsel indication. And that's essentially because your client just wants some vindication. She wants some vindication. She wants somebody to say that it wasn't really necessary. That's part of it, Your Honor, but it is a civil rights action. A determination that her rights were violated would potentially serve to improve the quality of conduct in Sonoma County and the City of Santa Rosa and in the Ninth Circuit generally. And that also has a value that is unique to plaintiffs, that vindication of a clause. Kagan. So to get to the merits, what – why isn't Mr. Newman right, first of all, with regard to the fact that while he may have agreed and got involved in the question whether to remove the children, he was not involved in the question of whether to remove them without a warrant? What contrary evidence do you have in that question? As pointed out in my brief, Your Honor, he testified in juvenile court before he knew  that he was going to be removed without a warrant. He testified in a joint decision to remove the children, but that is a different question from whether it was a joint decision to remove the children without a warrant. Sure. But it was understood that the removal was going to be done right then, and as Your Honor's indicated that you understood earlier, the fact that it was going to be done immediately meant that it was going to be done without a warrant. Well, I mean, it sort of wasn't his business. I mean, he's not a law enforcement person. For all he knew, either he – the law enforcement person had gotten the warrant earlier, or the law enforcement person could call up in the next 5 minutes and get a warrant or something. I mean, why was it his problem? It's his problem, Your Honor, because the same Ninth Circuit law that says that a police officer must get a warrant unless he's got – faced with exigent circumstances or a social worker must applies to both of them. And to endorse this defense, the pointing the finger at the other guy that they both and the defendants are offering – are proffering to the Court today, is to endorse an end run around the constitutional protections which the Ninth Circuit and the Supreme Court has given to all of the citizens of the Ninth Circuit. Well, I'm not sure there's any – if the social worker himself were to do it, that would be one thing. But how is there an end run around the law if the police officer is liable? What the police officer, what Detective Clark – And why do you need both? Why do I need both? Because – To avoid an end run around the law. Well, as they've taken great pains to point out to this Court, Newman dallied for 42 days asking questions, asking the same questions, reinterviewing the same people. Clearly, he could not possibly claim exigent circumstances whatsoever. All right? That left him the option of calling a judge if he would have actually followed Ninth Circuit jurisprudence on the issue. What he did is call a cop instead. That cannot be the law.  It cannot be approved. Connors, on the other hand – Well, I gather his position is that under State law, he doesn't have the authority to call the judge. He most certainly doesn't. He absolutely can't. They're just wrong about State law. It's not true that it's up to the – that he has to go to the law enforcement if he wants the children taken away immediately. Rogers involved social workers removing children. Beltran was a social worker removing a child who went to the court to try to get a warrant. There are plenty of cases – Well, first of all, are they both California cases? They're both Ninth Circuit cases. No, but are they California cases? They're not California law cases. I know, but he's claiming that under California State law, the social worker doesn't have the authority to get a warrant. It has to be an officer. I mean, I don't see why they can't have that division of responsibility. He's simply wrong. I'm sorry, what? He is simply wrong. He can remove a child without a warrant. He can try to obtain a warrant to get one. I disagree with that question. I guess it matters what I hear now. My understanding is he has a somewhat more nuanced position, which is there are circumstances in which I can get to take the child, but this wasn't one of them. Okay. And you say he could have gone to get a warrant in this case? Yeah. He had 42 days. In Rogers, they said it was a few hours. But that's not the issue. The issue is under State law, is that social worker authorized to get a warrant to remove a child, to get a protective custody order, under the circumstances of this case, where the child is not otherwise in protective custody. Yes. All right. So you need to give us a summary. Do you have a case or a statute or something? Welfare and Institution Code 340 governs the issuance of protective custody. What? I'm sorry. Welfare and Institution Code section 340. If I may speak briefly for a moment on some of the points raised by counsel, the case of M.L., the State law case that supposedly elaborated on and ruled upon the Wallace case, Wallace was raised in that case, but that was a desperate grasping at straws by a woman whose factual situation is just vastly different, completely distinguishable from the facts at bar here. The case is distinguishable, does not stand for the broader proposition for which it is proper. The CPS policy, their local, the way they do things in Sonoma County is irrelevant to whether or not Defendant Newman, in fact, participated integrally in this decision. His testimony was that he participated in the decision. He also testified that he sought the input and guidance from the police officers, not Detective Connors, but his supervisors with Santa Rosa Police Department throughout the course of his investigation so that he could custom tailor his investigation to fit what the police department would think they would need to justify a removal of a child. How could that be? That's not a question of removal, not removal on an emergency basis. The issue here, as I understand it, is whether it could be removed on an emergency basis, they could be removed on an emergency basis without a warrant. So what is it? Why is the social worker liable for the failure to get a warrant? The social worker provided all of the information upon which both of them are arguing and that the removal, warranted or warrantless, was justified. He provided all of the information for any, for Connors to say that all of the information I had, I got from Newman, and I made the decision, but I made a snap judgment, so it's okay, but we shouldn't look at Newman because he didn't actually admit that he participated in the decision to remove without a warrant is, is there? Is there evidence that Newman recommended to, to the officer that removal take place without a warrant? They discussed the matter at the conclusion of the forensic interviews on February 1st. A plan was formed and then it was executed. Part of that plan was that Connors would physically take custody of the children. Newman went directly to the shelter where they were taken. I think a certainly reasonable inference in our favor is in order that this was a joint     Do you have a comment on that? Do you have comment on the qualified immunity issues? Yes, Your Honor. I think the law is quite clearly established by Mabe, Calabretta and Rogers that this sort of delay in the investigation was after the events here. The law was clearly established. You can't wait around and then later claim that it was an emergency because Rogers was afterwards. Go ahead. Fair enough, Your Honor, but again, Mabe and Calabretta were before, so, and the denouncement. But this might language was really in Rogers, right? It was done one time. Rogers also used likely in the decision. I find it hard to believe that the Court Well, suppose it wasn't might. Suppose it was likely. Wouldn't you have a lot more trouble at that point? I wouldn't have a lot more trouble at that point. No, they would have a lot more trouble, Your Honor. Right. So I guess the interesting question is then if Rogers made the constitutional standard less, I guess it still has to be unconstitutional, and therefore, we still have to do Rogers before we get to the reasonableness question. Yes, I believe that's true. I don't really believe Rogers intended to lower the standard given the outcome of the case entering summary judgment in favor of the plaintiffs in that case. But here, why would you say – I mean, here you have a Federal judge saying he can't figure it out. I mean, as I said earlier, I don't think that really has much to do with us, except for some evidence that somebody else who looked closely at the record was a bit mystified. I think it's an unfortunate choice of wording on the order on the part of Judge I don't believe it's neither here nor there to appear today. It's a denotable review. Your Honors can make a decision. But essentially, then, you have to think that you should have gotten summary judgment. I certainly do think that. And I filed a cross-appeal, but for procedural reasons, it was determined not to be proper for me to have done so at that time. Any further questions? What else? Do you want to talk about the collateral stop law here? I simply think it does not apply, Your Honor. There was no – the issues that are relevant to this Federal case were not actually or necessarily litigated and decided in the juvenile court. Well, the sentences sure look like they're the same question, if this evidence is the same. I mean, the only way one gets around it is by something like I said, i.e., that the context isn't the same. But this purported inquiry is almost exactly the same, isn't it? Again, as to the necessity or the appropriateness of the removal and the continued placement of the children, yes, that is arguably quite similar. But as to the exigency, the juvenile court does not have occasion and therefore does not make any adjudication whatsoever as to whether it was exigent. Their argument to the contrary is simply that the standard is precisely that. It's something to the effect of – let's see if I can find it now. It says it has to be – it has to have a substantial risk that the child will suffer serious physical harm, but then with regard to this variety of hearing, there also has to be an urgency, right? No, that is not correct, Your Honor. I also point out to the Court that the detention hearing there is a prima facie standard. The counsel makes a big deal out of the fact that it was uncontested. But it's a prima facie, much like a motion to dismiss, a very low standard, very difficult to disprove as the accused parent or as the defendant in a civil case. It's very difficult to prevail on a motion to dismiss based on a failure to sufficiently allege. I'm a little baffled. It's always disturbing when this happens because I'm sure, although I can't find it at the moment, that the standard on this initial detention hearing has an urgency piece to it. You're telling me it does not? It does not. Well, when I find that it does, then I'm – I'm usually wrong about these things. Okay. It does not have any – the juvenile court has no occasion to address whether there was time to get a warrant or whether the defense got one. No, that's not what I said, but that there has to be urgency as of the time of the hearing. There is some language in 300 that has a forward-looking aspect to it, but it has nothing to do with the urgency of the removal on February 1st, as it were in this case. I'm not sure what urgent means in that case, whether it means it's got to be done at the moment at the court, it's – or that it's terribly important. But I can't believe that because they say it's urgent in every case, that that means in every case you don't – you don't do that. Here it is. In 305, it says that an officer may, without a warrant, and it's talking about the warrant standard, take into temporary custody a minor when the officer has reasonable cause for believing that the minor is a person described in Section 300 and, in addition, that the minor has an immediate need for medical care or is in immediate danger of physical or sexual abuse. Now, that is not what was governing at the detention hearing. No, Your Honor. A detention hearing is about 300, 305. So it doesn't get into the immediate need. No. That's just 305, which is a State law rule that has to do with whether the police officer needs a warrant, Your Honor. But the detention finding is based only on 300, which does not have that component. Okay. Thank you very much. Thank you, Your Honor. Counsel, I think – I'm going to be short, Your Honor, so I intend to be very short. On the business of whether Mr. Newman agreed to the removal or even the removal without a warrant, we contend that's not sufficient integral participation, which is a primary element, a threshold requirement for a constitutional violation. So there's no first prong – there's no meaning of the first prong of saucier, but also there's no meaning of the second prong of saucier clearly established. Because I haven't found a case, Your Honors, not one case, that says that where one agency agrees that with the conduct of another agency, that agreeing agency can be liable. There's no clearly established law that held that up. Yes, but that's what I was trying to say at the very beginning of your argument. Does that come into a qualified immunity issue? I think it does, Your Honor. I think that's the essence of saucier. I think that's the second prong of saucier. And it's a – Well, the second prong of saucier has to do with something – whether something unconstitutional was done to this – was done, but it doesn't have to do with the question of who's liable for it, does it? It has to do with whether, if there's a constitutional violation, there is liability. So if you find that – if you find that Mr. Newman's conduct was integral participation, which I don't think it was, then I think under the second prong of saucier – I haven't found a case that says that these two interagency agreements constitute liability. And I don't think that – It's not just an interagency agreement. According to Conner's testimony, he said that the information was provided from Newman that the two children who were left in the house needed to be removed. Otherwise, it was – they were subject to immediate danger based on the discipline in the house. Now, that – I mean, that statement suggests at least – and if you take it in the light most favorable to the plaintiff – that he was telling the police officer that they had to be removed immediately. And immediately means now without a warrant. But I agree with what Your Honor is saying. On the other hand, with all due respect, the police officers make their own decisions on this, and Mr. – Officer Conners testified in his deposition that they treat the information from CPS as credible, they treat CPS social workers as credible witnesses, but they make their own independent determination. And the evidence is clear he did that here, Your Honor. If he acts on the basis of what the social worker told him, that the child has to be I don't think Mr. Newman told him he had to be removed immediately. I think Mr. Newman agreed it may have been appropriate to remove immediately. But Mr. Newman – remember, Mr. Newman, if he felt a warrantless removal was appropriate, had plenty of time to do that, Your Honors. And the fact that he didn't meant he believed he couldn't do that. And just to correct Judge Berzon, it's not California law that disallows a social worker from removal without a warrant. It's the local rules in this jurisdiction, and specifically the city's policy and procedures say that CPS workers do not have the authority to take a child into protective custody. That's page 514. But that doesn't quite meet Judge Reinhart's question. What he read to you is a recital of testimony from which one could infer, subject to proof, one could infer that Newman advised the officer that removal immediately was called for. That doesn't say that Newman himself had the authority to conduct the removal. But it certainly goes a substantial way, if one believes that testimony, to say that Newman was an integral participant. I don't – I haven't – again, Your Honor, I haven't found any authority that says that where one agency tells another agency, I think certain conduct is appropriate. And I don't think Mr. Newman dictated that. I think he said – I think the reasonable inference is that he said he thought it was appropriate. I don't think there's any – I don't think it's clearly established that that creates liability for Mr. Newman. I don't think one agency dictating or telling another agency what to do, which isn't what happened here, would create liability. So – and that – I think that – that is qualified immunity under – under associate. Thank you. If I may make one point, because I didn't get to do that, Your Honor, on this business of might versus likely to reoccur, this dichotomy in the cases. Here we have a judicial finding, a judicial finding, that the abuse was likely to reoccur. And I'm going to quote from the court of – the State court of appeals decision in the underlying case. The State court of appeal, at page 661 of our excerpt, said that, quote, the evidence supports a reasonable inference based on the long history of appellant's past abuse that such abuse is likely to reoccur, placing minors at a substantial risk of harm, end quote. So I think you've got – The question isn't whether it's likely to reoccur. It's whether it's likely to reoccur before you can get a warrant. I think the wording of Wallace, Your Honor, which Your Honor wrote, is likely to reoccur. And also Rogers, with that bad might. Thank you, Your Honor. Thank you. One thing I'd like to have cleared up is, is this the temporal, the 305 standard ever adjudicated? You seem to say that it was in some retrospective way, and I don't understand that. The substantive standard under 300 doesn't – is forward-looking. But you said there was also something backward-looking, and I didn't know what that was about. Right. If we look at the ML case, which discusses these different statutes, including 305, and that's at 172 Calab IV. Right now, I'm on page 526. They're describing the parents' contentions on appeal with respect to the juvenile court's decision. The appellate court says at the end of that summary of the contentions, Finally, mother asserts that the court erred in finding exigent circumstances allowing HSA to take the newborn into protective custody pursuant to section 306. Now, moving on to page 527, a couple paragraphs down, the court of appeal continues by noting that the social workers have authority under the Constitution to remove the child without a warrant if the information they possess at the time of seizure provides reasonable cause to believe that the child is in imminent danger, citing the Wallace decision. At that point, the court then turns to the facts of the case before it, goes through them. This is at the very bottom of 527, and summarizes it by saying, Thus, sufficient evidence supports the juvenile court's finding of exigent circumstances. So what this case stands for, and the reason we cited it, is that at that initial detention hearing, there is a retrospective looking at what happened. Here, it was the taking of a child, a newborn, from the mother at the hospital. But these statutes ---- Kennedy, it does say that in that case, the juvenile court found exigent circumstances. Correct. And the court of appeal is affirming that finding. Yes. That's not this case. No. No. Not the court of appeal in this case. Right. But it does show to me. I mean, if they said that about this case, it would be one thing. But it doesn't say that in every case they make findings that an arrest without a warrant was required by exigent circumstances. You're correct, Your Honor, that the order that was issued in this case that just quotes the statutory language from 319 doesn't use the words ---- And the court of appeals didn't ever address that question. No. It didn't use the words urgency or exigency. Or 306, it didn't do a 306 inquiry at all. No. But my point is that 319 refers to 306. So when the juvenile court at the detention hearing makes its finding under 319, by operation of law, that includes ---- But in this instance, it wasn't even the social worker or temporary custody. So it's not even relevant. Well, no. It doesn't even apply. It was, Your Honor, because the officer delivers the child to the social worker. If you look at section ---- Yes. And that's why 1 doesn't say that. It's only 2 that says that. No. But if you look at 309, 309a says, Upon delivery to the social worker of a child who has been taken into temporary custody under this article, the social worker shall immediately investigate the circumstances of the child and the facts surrounding the child's being taken into custody, and continues on to say, and shall immediately release the child to the custody of the child's parent unless one or more of the following conditions exist. Condition 2 is continued detention of the child is a matter of immediate and urgent necessity for the protection of the child. So that's why when we cite it in our brief to all these statutes, what we're saying is ---- But that's an infuturo statement, isn't it? No, no, no. This is before the detention hearing. In other words, when the child is first received at the county home, that's when the finding has to be made by the social worker before ---- Yes. But there's absolutely no indication that it was ever adjudicated here. No. But what I'm saying, Your Honor, it ---- No. It's the answer. You're right. There's not an explicit finding. But to bless what occurred, the juvenile court has to find that the statutes have been complied with. And that is necessarily implied in its decision. Otherwise, it can't find that the detention was correct because the statutes weren't fulfilled. I think we're way, way over. Okay. I just want to say again. Thank you. This case, I really would hope that the two sides would try once more to resolve it. It is not that much involved, as I understand it. It's not the money. There's not going to be much money received if the plaintiff wins. The jury's going to be aware that it's five days and then it was still taken from the mother. It's not a large verdict that's involved. If it's a principle about how, you know, the statute is administered, you know, I really don't, well, somehow there ought to be some way to work this out. Nobody's going to benefit that much from whatever we do. And you really don't want to spend years in litigation. There must be a better way to resolve this than going up and down through the court system. So, I just hope you will work out a way to do somehow. What you're going to get if you win is a trial. So, it's not going to be over. It's mystifying. And you'll only win if you go up and down, and maybe a couple of times. I'm not sure what benefit the plaintiff can get, but there ought to be some way to give the plaintiff some satisfaction. I gather it's mainly a principle you want established. But principle is sometimes not best acquired in the courts. So, I really would urge you both to try to work out some solution. It's not, the litigation's not going to make anybody very happy at the end. I would endorse every syllable of what Judge Reinhart said. Judge Pollack knows a lot more about all of this than I do. Thank you. I appreciate those comments. Okay. Thank you all very much. That case, last case here is submitted.
judges: Pollak, Reinhardt, Berzon